MARIEANNA JORDAN *vs.* THE DELAWARE AND ATLANTIC TELE-
GRAPH AND TELEPHONE COMPANY, a corporation of the
State of New Jersey.

*Damages—Cutting Shade Trees—Telephone Company—Consent of
Owner—Consent of Husband or Son—Privilege to Construct
Telephone Line Carries the Right to Reasonably Trim Trees
—Injury to Trees, or Depreciation of Land Must be
Shown—Compensatory Damages—Exemplary
Damages—Measure of Damages.*

1. The owner of the fee has a right to the trees growing upon his
land upon the side of a public highway, for all purposes, not incompatible
with the proper and lawful use of the highway.

2. If the owner of the fee by an agreement made, or assented to by
him, or by another for him, under his authority, grants a telephone comp-
any the right to construct its line upon, or across his land such company
has the right to cut or trim trees standing upon the land over which the
right of way is given, so far, and to such extent, as may be reasonably
necessary for the proper construction and operation of the line.

3. The trimming or cutting of shade trees along the public highway,
without the knowledge or consent of the abutting owner of the fee, or
without having obtained a right of way from him, constitutes an unlawful
act for which he may recover damages.

4. A telephone company may acquire the right to trim trees by
agreement entered into with the owner of the land, or one who has the
right to manage and control it to that extent.

5. A wife may adopt or ratify acts done or contracts made by her
husband in respect to her separate estate without authority.

6. Ratification by a wife of acts done or contracts made by her
husband without authority bind her as fully as if she had authorized him,
in the first instance.

7. Ratification of acts done or contracts made by a husband may be
shown or effected by acquiescence on the part of the wife.

8. Any agreement made by the husband respecting his wife's
separate estate, or by any one else, without her authority, is not binding
upon her unless she does ratify or acquiesce in such agreement.

9. A recovery for cutting or trimming shade trees along a public
highway can only be had by the abutting owner of the fee by showing
some injury to the trees, or depreciation of his lands in value by reason
thereof.

10.   In an action for damages for cutting shade trees along a public highway of an abutting owner of the fee the jury must first determine from the testimony whether they shall award compensatory damages.

11.   To justify giving exemplary or punitive damages when claimed in addition to compensatory damages, the jury should be satisfied from the testimony that the injury complained of was not only committed wrongfully and unlawfully, but that it was also malicious, or wilful and wanton in its character.

12.   The measure of damages for cutting shade trees of an abutting owner along a public highway is the difference between the value of the land before and after the cutting of the trees, as shown by the evidence.

(*December* 3, 1909.)

PENNEWILL, C. J., and BOYCE, J., sitting.

*W. W. Knowles* for plaintiff.

*Andrew C. Gray* and *John F. Neary* for defendant.

Superior Court, New Castle County, November Term, 1909.

SUMMONS CASE (No. 119 September  Term, 1908), brought to recover damages for cutting, and mutilating certain shade and fruit trees, growing on the land of the plaintiff, upon the side of a public highway and in front of the dwelling house of the plaintiff, but on the opposite side of the highway from the dwelling.

Verdict and judgment for plaintiff.   Writ of error sued out of the Supreme Court by defendant.

Counsel for the defendant was  permitted, in cross examination of the plaintiff, to inquire, against objections, whether her husband, assisted by their son, was not, at the time of the cutting of the trees, for which this action was brought, in the management and control of the farm of the plaintiff, on which she resided with her husband and family, and whether she did not know that her husband granted the  right-of-way agent of the defendant permission to erect the telephone line when it was first established and to trim trees at that time; but he was not permitted to

ask the plaintiff, "Your husband was considered by all your neighbors as the head of the house?" Testimony of this general character was admitted (1) for its bearing upon the question of the consent or acquiescence of the plaintiff as to the trimming of the trees complained of; (2) and in mitigation of exemplary damages. A conversation by a representative of the defendant with the plaintiff and her daughter respecting the trimming of the trees, had before and in connection with the installation of a phone at the residence of the plaintiff, which the son and daughter desired should be installed, was inquired into, in cross examination of the plaintiff, against objections.

The plaintiff was also asked; "You know that your son signed your husband's name to a contract? "And you knew that when the phone was installed, didn't you?"

The evidence disclosed that the trimming of the trees in question was done the day on which the phone was installed in plaintiff's house, and that the servants of the company were left in the house for that purpose when the plaintiff and her family left to attend a funeral.

Evidence of the cash value of the farm just before and after the trees were cut, was admitted against objections by the defendant.

The defendant was permitted to introduce evidence, against objections, for the reasons before stated, to the effect that the telephone line was erected, in the first instance, and other trees were then trimmed by and with the consent and permission of the husband also that the son said it was all right to trim the trees and put the phone in.

Also that the daughter when asked for the owner of the property directed the right-of-way agent of the defendant to her father at the barn.

Also an agreement signed by the husband to secure the right-of-way to erect the telephone along the public road passing through the farm.

A later agreement respecting the installation of the phone, in the name of the father was also admitted.

The offer to introduce evidence to the effect that the husband gave an electric light company, an entirely independent line, permission to erect its line and to cut trees and to show acquiescence of plaintiff was unsuccessful.

*Mr. Neary:*—I offer this evidence for the purpose of showing that at or about the time of the construction of this telephone line, Marshall Jordan gave to the electric light company permission to cut trees and install their line, which permission was actually operated under and was acquiesced in by Mrs. Jordan. I offer that for the purpose of showing his management and control of this farm at or about the time and his general authority as agent.

PENNEWILL, C. J.:—We understand your purpose in offering this testimony is to show that Marshall Jordan gave to another company that is represented by this witness, Mr. Maloney, authority to cut trees—it being an entirely separate and distinct line—for the purpose of showing that Marshall Jordan had general authority and was in the management and control of that farm?

*Mr. Neary:*—Yes, sir.

PENNEWILL, C. J.:—We cannot tell how wide a range this case will take if we allow you to go into entirely independent and separate transactions. We sustain the objection.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—The plaintiff in this case seeks to recover from the defendant damages alleged to have been caused by the unlawful cutting of about eight maple trees and one pear tree on her lands and premises, situated in Mill Creek Hundred in this county, on the fourteenth day of June, 1907. The plaintiff claims that the said maple trees which stood in front of her lawn were of much value for shading and ornamental purposes, and that the pear tree was valuable and profitable on account of the fruit it bore; that the defendant company, without legal jusitfication or necessity, and against the will and consent of the plaintiff, by its agents, servants and employees, at the time aforesaid, carelessly, negligently and unskillfully did cut and clip the said trees, and

Charge.

did remove the tops thereof, by means whereof the said maple trees were marred, injured and damaged, and rendered almost useless for shading and ornamental purposes, and the plaintiff was deprived of great gain and profit by reason of the injury and damage to the pear tree, and that the lands and premises of the plaintiff were and are greatly depreciated and reduced in value.

The plaintiff claims also that the cutting of said trees was done wilfully and with gross negligence, and that she is, therefore, entitled to recover what are known as exemplary, vindictive or punitive damages.

The defendant company denies that the cutting of the plaintiff's trees was done unlawfully or without necessity, and contends that it was done with proper care and with the acquiescence of the plaintiff, and that the trees were not injured in any way by the acts of the defendant, and that the lands and premises of the plaintiff were not thereby depreciated in value.

The defendant claims that the trimming or cutting it did to the trees was necessary for the proper use and operation of its wires and telephone system along the highway, that no more cutting was done than was necessary for that purpose, and that the cutting or trimming was permitted in consideration of the company's putting a telephone in the house of the plaintiff.

It is not denied by the company that the plaintiff, being owner of the fee, had a right to the trees growing on the land upon her side of the road or highway, for all purposes not incompatible with the proper and lawful use of the highway.

But if the owner of such fee by an agreement made or assented to by such owner, or made by some one else acting under the authority of such owner, gives a telephone company the right to construct a telephone line upon or across his lands, such company has the right to cut or trim trees standing upon the land over which the right of way is given, so far, and to such extent, as may be reasonably necessary for the proper construction and operation of such line.

We may say to you that the trimming or cutting of shade trees along the public highway, without the knowledge or con-

sent of the abutting owner of the fee in such highway, or without having obtained a right of way from such abutting owner, constitutes an unlawful act for which damages may be allowed the party aggrieved.

A telephone company may acquire the right to trim trees of individuals by agreement entered into with the owner of the land or one who has the right to manage and control it to that extent.   And a wife may adopt or ratify acts done or contracts made by her husband in respect to her separate estate without authority, and in case of such ratification she is as fully bound as if her husband had been her duly authorized agent in the first instance; and such ratification may be shown or effected by acquiescence on the part of the wife.

The jury are the exclusive judges of the evidence, and should carefully consider all the facts and circumstances surrounding the case, as shown by the testimony.

If, after such careful consideration of the evidence, you are satisfied by the weight of the testimony that the plaintiff did not ratify or acquiesce in any agreement made by her husband, or any one else, granting to the defendant a right of way over her lands for the construction and operation of a telephone line, or that the trees might be cut, your verdict should be in favor of the plaintiff, provided you think she sustained some injury or damage on account of the cutting of the trees.   If the trees were not in any wise injured, or the lands of the plaintiff at all depreciated in value by reason of the acts of the defendant in the cutting. or trimming of the trees, you could not, of course, return a verdict for the plaintiff, because she must show that she has sustained some damage before she can recover in this action.

The plaintiff in this case claims not only compensatory damages, but also exemplary or punitive damages.   It is the law that in actions of this character the jury may, if they are satisfied from the testimony they should do so, award what are known in the law as exemplary or punitive damages.   But it is for the jury in every case to determine from the testimony, *first*, whether they shall award to the plaintiff compensatory damages;

and, *second*, whether in addition to such damages ,if given, they should award also exemplary or punitive damages.   To justify you in giving exemplary or punitive damages you must be satisfied from the testimony that the injury complained of was not only committed by the defendant and was wrongful and unlawful, but that it was also malicious, or wilful and wanton in its character.

If you should find for the plaintiff and for compensatory damages only, the measure of such damages would be the difference between the value of the land before and after the cutting of the trees, as shown by the testimony.

Verdict   for   plaintiff   for   $250.